Cite as 2025 Ark. App. 326

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR-24-515

| | |
|---|---|
| CASEY O'CONNOR<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered May 21, 2025<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NOS. 72CR-18-44; 72CR-19-2022; 72CR-19-2719]<br><br>HONORABLE JOANNA TAYLOR, JUDGE<br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Casey O'Connor appeals the order of the Washington County Circuit Court revoking his probation on three underlying cases.[1] He was sentenced to ten years' imprisonment. Appellant argues that the State failed to show that he inexcusably violated the terms and conditions of his probation. We affirm.

Appellant pled guilty in the above cases on January 12, 2022, and was sentenced to three years' probation. The sentencing order was filed on January 14 along with the conditions of appellant's probation. Appellant's probation included, but was not limited to, reporting to his supervising officer; obeying all federal and state laws, local ordinances, and

---

[1]Case No. 72CR-18-44 (first-degree terroristic threatening, Class D felony); case No. 72CR-19-2022 (failure to appear, Class C felony; and theft by receiving, Class D felony); case No. 72CR-19-2719 (failure to appear, Class D felony).

court orders; and paying his court-ordered fines and costs. The State filed a motion to revoke appellant's probation on January 5, 2023, alleging that appellant had violated the terms and conditions of probation by committing new criminal offenses (possession of drug paraphernalia, obstructing governmental operations, loitering, and resisting arrest) and by failing to pay his court-ordered obligations.

The State filed petitions for fitness to proceed and for criminal responsibility examinations for appellant on January 4, 2024. The circuit court ordered both examinations the same day. Dr. Stephen P. Nichols performed the forensic examination. His report stated that appellant suffers from schizotypal personality disorder; however, Dr. Nichols opined that appellant did not have a mental disease or defect at the time of the alleged conduct and that appellant had the capacity to conform his conduct to the requirements of the law. Dr. Nichols further opined that appellant is of "above-average intelligence who has some training as an electrician." He also noted that appellant had been homeless "for much of his life" and had never received any psychiatric treatment; that appellant has a "history of cognitive and perceptual distortions and eccentricities of behavior"; and that appellant possesses "odd beliefs and magical thinking that influence his behavior, and display[ed] some paranoid ideation." Dr. Nichols stated that appellant's diagnosis "does not rise to the level of mental disease or defect under Arkansas statutes"; that appellant "is an intelligent man, and . . . would have no difficulty understanding that his alleged behavior constitutes criminal conduct"; and that appellant had the capacity to conform his conduct to the requirements of the law since there was "no historical data that would suggest that [appellant] was psychotic

2

at the time of the offenses [and] that [appellant's] decision to not speak directly to police officers was a matter of choice rather than mental disease." As to appellant's fitness to proceed, Dr. Nichols opined that appellant understood the charges against him and the potential consequences of being found guilty and thus had the capacity to understand the proceedings against him and to assist effectively in his own defense.

The State filed an amended motion to revoke appellant's probation on May 9, contending that appellant had violated the terms and conditions of his probation by committing new offenses (possession of drug paraphernalia, four counts of obstructing governmental operations, loitering, resisting arrest, two counts of fleeing on foot, four counts of criminal trespass, two counts of public intoxication, three counts of refusal to submit to arrest, two counts of shoplifting, and theft of property); by failing to report as directed; and by failing to pay his court-ordered obligations.

The revocation hearing took place on May 10. Officers of the Fayetteville Police Department, who participated in appellant's recent arrests, testified about the circumstances of those arrests. Most of the officers' testimony had a common theme: when officers attempted to place appellant under arrest, appellant's posture was "rigid," and appellant had a "complete lack of verbal and motor responses." However, the officers agreed that those characteristics could fit any potential suspect resisting or refusing to submit to an arrest.

Matthew Penquite, appellant's probation officer, testified that appellant's visits were "sporadic" due to appellant's transportation issues. He stated that since being placed on probation in January 2022, appellant had made only eight visits. He testified that appellant

3

had not made any payments toward his fines and fees. He said that since October 2022, he has been notified about thirteen times that appellant had been arrested. He opined that appellant is not capable of probation and that if appellant was eligible for a regional-punishment facility ("RPF"), that is what he would recommend; however, he stated that if appellant was not eligible for RPF, he believed appellant's only other option was a term of imprisonment. On cross-examination, Penquite stated it was possible that appellant was incarcerated for most of the time he did not report. He testified that appellant would exhibit abnormal behavior (stand in silence, salute Penquite, and refer to Penquite as officer 122) when he did report, but there were also times when he and appellant were able to have normal interactions. He admitted that he expressed concerns with appellant's mental ability in his notes. On redirect, he acknowledged that there were at least eight months when appellant was not incarcerated but still did not report.

During closing argument, the State argued that appellant should be sent to the Arkansas Division of Correction ("ADC") for at least ten years because he was not eligible for RPF. Appellant's counsel asked the circuit court to allow appellant to remain on probation with the condition that appellant complete or enter and complete a mental-health program. The State asked the circuit court to take judicial notice of the mental-health evaluation the State filed and noted that Dr. Nichols found appellant fit to proceed and concluded that appellant's personality disorder did not cause him to commit crimes. The circuit court found that appellant had violated the terms and conditions of his probation by committing new offenses, failing to report, and failing to pay his court-ordered obligations.

4

Appellant was sentenced to an aggregate term of ten years' imprisonment. The sentencing order was filed on May 14. Appellant filed a timely notice of appeal the next day; he filed an amended notice of appeal on May 31.

As his first point, appellant argues that the State failed to prove that he inexcusably violated the terms and conditions of his probation. To support revocation, the State must prove a violation of the conditions of probation by a preponderance of the evidence.[2] However, the State need only prove a defendant violated one condition in order to revoke.[3] The appellate court will not reverse the circuit court's decision to revoke unless it is clearly erroneous or clearly against the preponderance of the evidence.[4] Appellant does not deny that he violated the terms and conditions of his probation; however, he maintains that his mental-health issues made his violations excusable. The State showed that appellant committed numerous new crimes for which he was arrested at least thirteen times during his term of probation. Once the State proved that appellant had committed at least one violation, appellant bore the burden of demonstrating a reasonable excuse for his noncompliance.[5] However, appellant did not testify. Appellant's attorney argued that appellant's mental-health issues were the cause of appellant's violations; however, appellant

---

[2]*Nelson v. State*, 2025 Ark. App. 152.

[3]*Id.*

[4]*Id.*

[5]*Mosley v. State*, 2018 Ark. App. 292, 550 S.W.3d 446.

underwent forensic examinations that showed not only that he was fit to proceed but also that he understood the criminality of his actions. Furthermore, appellant's personality disorder is not considered a mental disease or defect under Arkansas statute. Thus, in light of the evidence before us, we cannot say that the circuit court clearly erred in finding that appellant inexcusably violated the terms and conditions of his probation by committing numerous new crimes. We affirm.

Appellant also argues that the circuit court erred by sentencing him to prison. He contends that his mental-health needs required that he be placed back on probation and ordered to obtain mental-health treatment. However, Penquite opined that appellant was not capable of probation. In a revocation proceeding, the circuit court has discretion in the sentence imposed and is authorized to impose any sentence that could have been imposed originally.[6] Here, appellant was sentenced within the statutory guidelines.[7] Thus, the circuit court did not abuse its discretion by sentencing appellant to the ADC.

Affirmed.

HARRISON and WOOD, JJ., agree.

*Dusti Standridge*, for appellant.

*Tim Griffin*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.

---

[6]Ark. Code Ann. § 16-93-308(g)(1)(A) (Supp. 2023).

[7]*See* Ark. Code Ann. § 5-4-401(a)(4)(5) (Repl. 2013) (the sentence for a Class C felony shall be no less than three years nor more than ten years; the sentence for a Class D felony shall not exceed six years).